**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| MACKINAC ISLAND FERRY CAPITAL LLC, | : | Civil Action No. |
| | : | |
| *Plaintiff,* | : | **VERIFIED COMPLAINT FOR BREACH** |
| | : | **OF CONTRACT AND FORECLOSURE** |
| v. | : | |
| | : | |
| HALDIMAND BAY COMPANY LLC; | : | |
| UNION TERMINAL PIERS, INC.; | : | |
| ARNOLD TRANSIT COMPANY; | : | |
| MCGREGOR OIL COMPANY; | : | |
| STRAITS TRANSIT, INC.; | : | |
| NORTHERN FERRY COMPANY LLC; | : | |
| ISLAND MANAGEMENT COMPANY LLC; | : | |
| ISLAND RESOURCE COMPANY LLC; | : | |
| ANITA SCHNEIDER; | : | |
| HENRY W. SCHNEIDER; | : | |
| THE TOOTS FOUNDATION; | : | |
| STEPHEN SCHNEIDER TRUST; | : | |
| THE 2008 HENRY W. SCHNEIDER TRUST; | : | |
| THE HENRY W. SCHNEIDER DELAWARE TRUST; | : | |
| CHEBOYGAN COUNTY TREASURER; | : | |
| U.S. BANCORP | : | |
| CHASE INDUSTRIES, INC. | : | |
| DEPARTMENT OF TREASURY – INTERNAL REVENUE SERVICE; | : | |
| MICHIGAN DEPARTMENT OF TREASURY; | : | |
| | : | |
| *in personam,* | : | |
| | : | |
| and the motor vessels | : | |
| STRAITS EXPRESS, Official No. 1029924; | : | |
| ISLAND EXPRESS, Official No. 931459; | : | |
| MACKINAC EXPRESS, Official No. 915735; | : | |
| STRAITS OF MACKINAC II, Official No. 521407; | : | |
| CHIPPEWA, Official No. 288825; | | |

13972249.1

ALGOMAH II, Official No. 286075;
OTTAWA, Official No. 278860;
HURON, Official No. 269888;
CORSAIR, Official No. 269660;
BEAVER, Official No. 264186; and
MACKINAC ISLANDER, Official No.
253170;
together with their engines, tackle, furniture,
apparel, appurtenances, etc., *in rem,*

        *Defendants.*

**Please withhold service *in rem* until further
notice from Plaintiff's attorney in
accordance with Federal Rules of Civil
Procedure Supplemental Rule for Admiralty
or Maritime Claims and Asset Forfeiture
Actions E(3)(c).**

## INTRODUCTION

1.      Plaintiff Mackinac Island Ferry Capital LLC ("Plaintiff" or "Ferry Capital") seeks a judgment for the $30,536,988.41 as of July 18, 2014, plus accrued interest and fees thereafter, it is owed by Defendant Haldimand Bay Company LLC ("HBC") and its subsidiary operating companies (the "Ferry Companies").  Plaintiff additionally seeks to recover said judgment by foreclosing liens on properties, (documented vessels and real property) that secure such indebtedness.

2.      Between 2010 and 2012, HBC received loans in the original amount of $21 million (the "Loans") to purchase and operate the Ferry Companies, which service Mackinac Island, Michigan.

3.      To induce the Loans, HBC and the Ferry Companies bound themselves to various agreements (the "Financing Agreements").  Among the Financing Agreements were promissory notes and loan and security agreements that specified the terms of the Loans, as well as various preferred vessel mortgages and real estate mortgages (the "Mortgages") that specified the collateral that secures repayment of the Loans.

4.      As of July 18, 2014, HBC and the Ferry Companies owed $30,536,988.41 under the Loans, including principal, fees, and accrued interest.

2

5.      HBC and the Ferry Companies have defaulted on a variety of their obligations under the Loans and their associated Financing Agreements, and have been in such default since late 2012.

6.      Ferry Capital is presently the holder of the Loans and their associated Financing Agreements.

7.      Because HBC and the Ferry Companies are in default, Ferry Capital seeks a money judgment against HBC and the Ferry Companies for the $30,546,988.41 outstanding under the Loans and foreclosure of its security interests in the various properties that secure the Loans.

## PARTIES

8.      Plaintiff Ferry Capital is a limited liability company organized under the laws of the State of Ohio.

9.      Defendant HBC is a limited liability company organized under the laws of the State of Michigan.  HBC is the 100% owner, either directly or indirectly, of the following Ferry Companies: Union Terminal Piers, Inc. ("UTP"), Arnold Transit Company ("ATC"), McGregor Oil Company ("MOC"), Straits Transit, Inc. ("STI"), Island Management Company LLC ("IMC"), Island Resource Company LLC ("IRC"), and owns 90% of Northern Ferry Company LLC ("NFC").

10.     Defendant UTP is a corporation organized under the laws of the State of Michigan.  UTP is a wholly-owned subsidiary of HBC.

11.     Defendant ATC is a corporation organized under the laws of the State of Michigan.  ATC is a wholly-owned subsidiary of UTP.

12.     Defendant MOC is a corporation organized under the laws of the State of Michigan.  MOC is a wholly-owned subsidiary of UTP.

13.     Defendant STI is a corporation organized under the laws of the State of Michigan.  STI is a wholly-owned subsidiary of ATC.

14.     Defendant IMC is a limited liability company organized under the laws of the State of Michigan.  IMC is a wholly-owned subsidiary of HBC.

15.     Defendant IRC is a limited liability company organized under the laws of the State of Michigan.  IRC is a wholly-owned subsidiary of HBC.

3

16.     Defendant NFC is a limited liability company organized under the laws of the State of Michigan.  90% of NFC is owned by HBC.

17.     Defendant Anita Schneider is an individual and resident of the State of Ohio.

18.     Defendant Henry W. Schneider is an individual and resident of the State of Ohio.

19.     Defendant, The Toots Foundation is an Ohio non-profit corporation.

20.     Defendant, Stephen Schneider Trust is a trust with the principal place of administration being Ohio.

21.     Defendant, the 2008 Henry W. Schneider Trust is a trust with the principal place of administration being Ohio.

22.     Defendant, Cheboygan County Treasury Department is a county governmental unit in the State of Michigan.

23.     U.S. Bancorp is a corporation with its principal place of business in Minnesota.

24.     Chase Industries Inc., is a corporation organized under the laws of the State of Michigan.

## JURISDICTION AND VENUE

25.     This Court has personal jurisdiction over all Defendants because the documented vessels and real property that are the subject of this action, and which form the basis of all *in personam* Defendants' interests in this action, are located within the jurisdiction of this Court.  In addition, this Court has personal jurisdiction over HBC and the Ferry Companies because HBC and the Ferry Companies consented to the jurisdiction of this Court pursuant to the Loans and their associated Financing Agreements.

26.     This Court has subject-matter jurisdiction over Counts I and II of this action pursuant to 28 U.S.C. § 1331, 46 U.S.C. § 31325(b) and (c), and Federal Rule of Civil Procedure 9(h), because Counts I and II involve admiralty and maritime claims, claims for indebtedness secured by a mortgaged vessel, and claims for foreclosure of preferred vessel mortgages.  This Court has supplemental jurisdiction over the remaining claims in this action pursuant to 28 U.S.C. § 1367, because such claims are so related to the aforementioned claims that they form part of the same case or controversy.

27.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, Federal Rules of Civil Procedure Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions C(2)(c), and Western District of Michigan Local Civil Rule 3.2, for the following reasons: (i) the

4

vessels that are the subject of the *in rem* action to foreclose on the preferred vessel mortgages are now, or will during the pendency of this action, be physically present within the Western District of Michigan; (ii) a substantial part of the events and omissions giving rise to the claims in this action occurred within the Western District of Michigan; and (iii) a substantial part of the real property that is the subject of this action is situation within the Western District of Michigan..

## FACTS

28.     In or about 2009, a group of investors formed a plan to acquire and operate a ferry business to service Mackinac Island, Michigan.

29.     The investors organized HBC to use as a holding company to acquire and hold the Ferry Companies, which had already been operating for years.

30.     HBC required financing in order to acquire and operate the Ferry Companies.

31.     In 2010, 2011, and 2012, HBC and its members entered into a series of financing transactions by which HBC received a loan in the original amount of $18 million to finance, refinance, and re-refinance the acquisition of the Ferry Companies (the "Financing Loan").

32.     In 2010, HBC and its members additionally entered into a separate transaction with Rippe and Kingston Capital Advisers ("RKCA") in the original amount of $360,000.00, which was subsequently assigned to the Plaintiff. *See Exhibit A. (All documents referenced in or attached to this Complaint are incorporated herein by reference).* The amount currently owing as of July 18, 2014 is $1,224,815.27, plus accrued interest thereafter.

33.     On June 17, 2011, HBC and its members additionally entered into a separate transaction with Big Turtle Capital Partners, LLC ("Big Turtle"), the Amended and Restated Put and Guarantee Inducement Agreement, which was subsequently assigned to Plaintiff on December 24, 2012. *See Exhibits B and C.* The amount currently owing as of July 18, 2014 is $3,900,000.00 plus accrued interest thereafter.

34.     In 2012, HBC and its members additionally entered into a separate transaction by which HBC received an operating loan in the original amount of $3 million, to finance HBC's continued operation of the Ferry Companies (the "Operating Loan").

35.     On February 24, 2012, UTP, HBC, ATC, MOC, IMC, NFC, and IRC entered into separate transactions, granting separate mortgages in amounts unspecified, to Anita R. Schneider, Henry W. Schneider, the Toots Foundation, the Stephen Schneider Trust u/a/d/Dec. 30, 2008, the 2008 Henry W. Schneider Trust, and the Henry W. Schneider Delaware Trust.

**The $18 Million Financing Loan**

36.    On June 18, 2010, Great American Life Insurance Company ("GALIC") made to HBC the Financing Loan, which was a one-year loan in the original amount of $18 million to finance HBC's acquisition of the Ferry Companies.

*37.*    The terms of the Financing Loan were specified in a Loan and Security Agreement and a Promissory Note that HBC and certain of the Ferry Companies executed in favor of GALIC. *See Exhibits D and E.*

38.    To induce GALIC to make the Financing Loan, HBC and the Ferry Companies also executed a variety of Financing Agreements that conferred upon GALIC financial benefits and security interests in collateral assets of HBC and the Ferry Companies.

39.    Among other assets, the Ferry Companies owned the following eleven vessels: *Straits Express* (Official No. 1029924), *Island Express* (Official No. 931459), *Mackinac Express* (Official No. 915735), *Straits of Mackinac II* (Official No. 521407), *Chippewa* (Official No. 288825), *Algomah* (Official No. 286075), *Ottawa* (Official No. 278860), *Huron* (Official No. 269888), *Corsair* (Official No. 269660), *Beaver* (Official No. 264186), and *Mackinac Islander* (Official No. 253170) (the "Mortgaged Vessels"). The Ferry Companies also owned various parcels of real property in Mackinac County and other counties in Michigan (the "Mortgaged Real Property").

40.    The Financing Agreements included preferred vessel mortgages on the eleven Mortgaged Vessels, real estate mortgages on the Mortgaged Real Property, and other security interests in favor of GALIC. *See Exhibits F, G, H, I and J.*

41.    As of June 2011, the one-year term of the Financing Loan to HBC was set to expire, and HBC and the Ferry Companies were unable to repay the principal amount due to GALIC under the Financing Loan.

42.    On June 17, 2011, Union Savings Bank ("USB") refinanced the Financing Loan by purchasing all of GALIC's interests in the Financing Loan and its associated Financing Agreements.

43.    Under the USB refinancing transaction, GALIC assigned to USB all of its interests in the Financing Loan and its associated Financing Agreements, and USB therefore became successor in interest to GALIC with respect to the Financing Loan and its associated Financing Agreements. *See attached Exhibit K.*

44.    Among other interests, GALIC assigned to USB its interests in HBC's and the Ferry Companies' Loan and Security Agreement, Promissory Note, and various preferred vessel mortgages and real estate mortgages. *See attached Exhibits L, M, N, O and P.*

*45.*    To induce USB to enter into the USB refinancing transaction, HBC and all the Ferry Companies also executed a Loan Modification Agreement and an Amended and Restated Promissory Note in favor of USB. *See attached Exhibits Q and R.*

46.    As of September 2012, HBC and the Ferry Companies were in default on their obligations under the Financing Loan and its associated Financing Agreements, including the obligations to make required payments on the Financing Loan and to deposit $1 million into a "Debt Service Cash Deposit Account" by September 30, 2012.

47.    USB declared that HBC was in default under the Financing Loan and its associated Financing Agreements HBC and the Ferry Companies have remained in such default to the present day. . *See attached Exhibits S.*

48.    On December 18, 2012, Ferry Capital refinanced the Financing Loan by purchasing all of USB's interests in the Financing Loan and its associated Financing Agreements.

*49.*    Under the Ferry Capital refinancing transaction, USB assigned to Ferry Capital all of its interests in the Financing Loan and its associated Financing Agreements, and Ferry Capital therefore became successor in interest to GALIC and USB with respect to the Financing Loan and its associated Financing Agreements. *See attached Exhibit T.*

50.    Among other interests, USB assigned to Ferry Capital its interests in HBC's and the Ferry Companies' Loan and Security Agreement, Loan Modification Agreement, Amended and Restated Promissory Note, and various preferred vessel mortgages and real estate mortgages. *See attached Exhibits U, V, W, X and Y.*

*51.*    To induce Ferry Capital to enter into the Ferry Capital refinancing transaction, HBC and the Ferry Companies also executed a Second Loan Modification Agreement and a Second Amended and Restated Promissory Note in favor of Ferry Capital, which included a loan fee and closing fee which are included in the amounts owing Plaintiff. *See attached Exhibits Z and AA.* These documents

52.    Although HBC and the Ferry Companies were already in default under the Financing Loan and its associated Financing Agreements at the time of the Ferry Capital

7

refinancing transaction, Ferry Capital agreed to forbear from pursuing foreclosure or other legal proceedings against HBC and the Ferry Companies for a period of time.

53.     To induce for Ferry Capital's forbearance, HBC and the Ferry Companies granted to Ferry Capital an additional security interest in all of HBC's and the Ferry Companies' property and assets. *See attached Exhibits BB and CC.* Among other interests, HBC and the Ferry Companies executed various preferred vessel mortgages and real estate mortgages in favor of Ferry Capital. *See attached Exhibits DD, EE, FF, GG, and HH.*

54.     Based upon Ferry Capital's acquisition of all of GALIC's and USB's interests in the Financing Loan and its associated Financing Agreements, Ferry Capital is presently the holder of all Financing Agreements under which HBC and the Ferry Companies conferred financial benefits and security interests upon GALIC, USB, and Ferry Capital in exchange for their participation in the financing, refinancing, and re-refinancing transactions.

55.     Because HBC and the Ferry Companies are in default under the Financing Loan and its associated Financing Agreements, the debt has been accelerated pursuant to the terms of the Loan and the entire indebtedness is presently due and owing.

56.     As of July 18, 2014, HBC and the Ferry Companies owed Ferry Capital $26,145,678.06 under the Financing Loan, and subsequent documents, including principal, fees, and accrued interest.

**The $3 Million Operating Loan**

57.     On June 17, 2011, Walden Ventures LLC f/k/a/ 709 Walden LLC ("Walden") made to HBC an operating loan in the original amount of $3 million, to finance HBC's continued operation of the Ferry Companies (the "Operating Loan").

58.     The terms of the Operating Loan were specified in a Loan and Security Agreement and a Promissory Note that HBC and the Ferry Companies executed in favor of Walden. *See attached Exhibit II and JJ.*

59.     To induce Walden to make the Financing Loan, HBC and the Ferry Companies also executed a variety of Financing Agreements that conferred upon Walden financial benefits and security interests in collateral assets of HBC and the Ferry Companies. The Financing Agreements included preferred vessel mortgages on the eleven Mortgaged Vessels, real estate mortgages on the Mortgaged Real Property, and other security interests in favor of Walden. *See attached Exhibits KK, LL, MM, NN, and OO.*

60.     As of November 2012, HBC and the Ferry Companies were in default to Walden on their obligations under the Operating Loan and its associated Financing Agreements, including the obligations to make required payments on the Operating Loan and to deposit $252 thousand into a "Debt Service Cash Deposit Account" by September 30, 2012.

61.     Walden declared that HBC and the Ferry Companies were in default under the Operating Loan and its associated Financing Agreements.  HBC and the Ferry Companies have remained in such default to the present day.

62.     On April 19, 2013, Walden filed a foreclosure lawsuit against HBC, the Ferry Companies, and various other entities to collect the outstanding amount due under the Operating Loan.  Walden's foreclosure lawsuit was captioned *Walden Ventures LLC f/k/a/ 709 Walden LLC v. Haldimand Bay Company LLC, et al.,* No. 2:13-cv-00137 (W.D. Mich.).

63.     On July 19, 2013, Ferry Capital purchased all of Walden's interests in the Operating Loan and its associated Financing Agreements.  Accordingly, on September 4, 2013, Walden's foreclosure lawsuit was dismissed without prejudice.

64.     Under its transaction with Ferry Capital, Walden assigned to Ferry Capital all of its interests in the Operating Loan and its associated Financing Agreements, and Ferry Capital therefore became successor in interest to Walden with respect to the Operating Loan and its associated Financing Agreements. *See attached Exhibit PP.*

65.     Among other interests, Walden assigned to Ferry Capital its interests in HBC's and the Ferry Companies' Loan and Security Agreement, Promissory Note, and various preferred vessel mortgages and real estate mortgages. *See attached Exhibits QQ, RR, SS, TT, and UU.*

66.     Based upon Ferry Capital's acquisition of Walden's interests in the Operating Loan and its associated Financing Agreements, Ferry Capital is presently the holder of all Financing Agreements under which HBC and the Ferry Companies conferred financial benefits and security interests upon Walden in exchange for its making the Operating Loan to HBC.

67.     Because HBC and the Ferry Companies are in default under the Operating Loan and its associated Financing Agreements, the debt has been accelerated pursuant to the terms of the Loan and the entire indebtedness is presently due and owing.

68.     As of July 18, 2014, HBC and the Ferry Companies owed Ferry Capital $4,391,310.35 under the Operating Loan, including principal, fees, and accrued interest.

## COUNT ONE – BREACH OF CONTRACT

69.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

70.     HBC and the Ferry Companies have defaulted on a variety of their obligations under the Loans and their associated Financing Agreements.

71.     As present holder of the Loans and their associated Financing Agreements, Ferry Capital is entitled to all remedies against HBC and the Ferry Companies that are available under the above-referenced agreements and applicable law.

72.     Among other remedies, Ferry Capital is entitled to accelerate the entire indebtedness under the Loans and declare it to be immediately due and payable.

73.     Ferry Capital has elected that the entire balance of the Loans, including principal, fees, and accrued interest, be immediately due and payable.

74.     As of July 18, 2014, HBC and the Ferry Companies owed Ferry Capital a total immediately-due indebtedness of $30,536,988.41, plus accrued interest and fees thereafter.

75.     Neither the Financing Loan nor the Operating Loan have been repaid or discharged.  The entire indebtedness is now due and owing, but remains unpaid.

76.     Ferry Capital has fully performed all of its material contractual obligations to HBC and the Ferry Companies.

## COUNT TWO – FORECLOSURE OF PREFERRED VESSEL MORTGAGES

77.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

78.     Among other security interests in their collateral assets, HBC and the Ferry Companies validly executed and delivered the above-referenced first, second, third, and fourth preferred vessel mortgages on the eleven Mortgaged Vessels (the "Preferred Vessel Mortgages").

79.     The Preferred Vessel Mortgages were executed to secure HBC and the Ferry Companies' outstanding indebtedness on the Loans.

80.     Each of the Preferred Vessel Mortgages constitutes a valid and subsisting lien upon the vessels described therein.

81.     Each of the Preferred Vessel Mortgages was validly recorded with the United States Coast Guard National Vessel Documentation Center, pursuant to 46 U.S.C. §§ 31321 and 31322.

13972249.1

82.     Each of the Preferred Vessel Mortgages, except for the vessels Island Express #931459 and Mackinac Express #915735, is a "preferred mortgage" within the meaning of 46 U.S.C. § 31322.

83.     Ferry Capital is presently the holder of the Preferred Vessel Mortgages.

84.     HBC and the Ferry Companies have defaulted on a variety of their obligations under the Loans and their associated Financing Agreements.

85.     HBC and the Ferry Companies' defaults under the Loans and their associated Financing Agreements also constitute events of default under the Preferred Vessel Mortgages.

86.     Because HBC and the Ferry Companies have defaulted under the Preferred Vessel Mortgages, Ferry Capital is entitled to have the Preferred Vessel Mortgages foreclosed, the equity of redemption of all Defendants forever cut off and barred, the Mortgaged Vessels sold free and clear of all liens, and the proceeds applied in payment of its liens.

87.     Each Defendant has or may claim to have some right, title, or interest in the Mortgaged Vessels. Each Defendant must set forth its interest therein in response to this Complaint or be forever barred from sharing in the sale proceeds.

### COUNT THREE – FORECLOSURE OF REAL ESTATE MORTGAGES

88.     Plaintiff incorporates the preceding paragraphs by reference as if fully restated herein.

89.     Among other security interests in their collateral assets, HBC and the Ferry Companies validly executed and delivered the above-referenced real estate mortgages on the Mortgaged Real Property (the "Real Estate Mortgages").

90.     The Real Estate Mortgages were executed to secure HBC and the Ferry Companies' outstanding indebtedness on the Loans.

91.     Each of the Real Estate Mortgages constitutes a valid and subsisting lien upon the real property described therein.

92.     Each of the Real Estate Mortgages was validly recorded in the records of Mackinac County, Michigan.

93.     Ferry Capital is presently the holder of the Real Estate Mortgages.

94.     HBC and the Ferry Companies have defaulted on a variety of their obligations under the Loans and their associated Financing Agreements.

13972249.1

95.     HBC and the Ferry Companies' defaults under the Loans and their associated Financing Agreements also constitute events of default under the Real Estate Mortgages.

96.     Because HBC and the Ferry Companies have defaulted under the Real Estate Mortgages, Ferry Capital is entitled to have the Real Estate Mortgages foreclosed, the equity of redemption of all Defendants forever cut off and barred, the Mortgaged Real Property sold free and clear of all liens, and the proceeds applied in payment of its liens.

97.     Each Defendant has or may claim to have some right, title, or interest in the Mortgaged Real Property. Each Defendant must set forth its interest therein in response to this Complaint or be forever barred from sharing in the sale proceeds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Honorable Court to issue judgments in its favor as follows:

1.     Enter a judgment against HBC and the Ferry Companies *in personam*, jointly and severally, in the total amount due and owing under the Loans, being the sum of $30,536,988.41, plus accrued interest and legal fees, which continue to accrue in accordance with the Loan documents and applicable law, plus all other recoverable costs and attorneys' fees;

2.     Enter a judgment against the Mortgaged Vessels, their engines, tackle, appurtenances, machinery, etc., *in rem*, jointly and severally, in the total amount due and owing under the Loans, being the sum of $30,536,988.41 plus legal fees and accrued interest, which continue to accrue in accordance with the Loan documents and applicable law, plus all other recoverable costs and attorneys' fees;

3.     Order that all liens on the Mortgaged Vessels and the Mortgaged Real Property be marshaled and that all Defendants be required to set forth any claim, lien, or interest they may have in or upon the Mortgaged Vessels or the Mortgaged Real Property, or be forever barred therefrom;

4.     Order that all persons claiming any interest in the Mortgaged Vessels or the Mortgaged Real Property be cited to appear and answer the aforesaid claims for foreclosure;

5.     Direct the manner in which actual notice of the commencement of this suit shall be given by the Plaintiff to the master, ranking officer, or caretaker of the Mortgaged Vessels, and to any person, firms, or corporations having interest therein;

13972249.1

6. Declare the Preferred Vessel Mortgages and the Real Estate Mortgages to be valid and subsisting liens upon the Mortgaged Vessels and the Mortgaged Real Property, superior to all interests, liens, or claims of any and all other persons, firms, or corporations, except such persons, firms, or corporations as have preferred liens over the Mortgaged Vessels;

7. Declare that HBC and the Ferry Companies are in default under the Preferred Vessel Mortgages and the Real Estate Mortgages;

8. Order that the Preferred Vessel Mortgages and the Real Estate Mortgages be foreclosed;

9. Order that the Mortgaged Vessels and the Mortgaged Real Property be arrested, condemned, and sold, and that the equity of redemption of all Defendants be forever cut off, barred, and foreclosed;

10. Order that upon the sale of the Mortgaged Vessels and the Mortgaged Real Property, the proceeds of such sale be paid to Plaintiff to satisfy the aforesaid demands, together with all interest, costs, and attorneys' fees;

11. Award Plaintiff all costs and attorneys' fees incurred in the litigation of this action; and

12. Award Plaintiff such other and further legal and equitable relief as the Court may deem just and appropriate.

/s/
Matthew D. Vermetten (P43425)
Brandt, Pezzetti, Vermettn & Popovits, PC
600 E. Front Street, Suite 102
Traverse City, MI 49686
Telephone: 231-929-3450
Fax: 231-941-9568
mvermetten@bfarlaw.com
*Attorneys for Plaintiff*
*Mackinac Island Ferry Capital LLC*

13

13972249.1

## **VERIFICATION**

I, Brent C. Rippe, being first duly sworn, depose and state as follows:

1.     I am a CEO of Mackinac Island Ferry Capital LLC, Plaintiff in the above-referenced action;

2.     I have read the foregoing Verified Complaint and know its contents;

3.     To the best of my knowledge, information, and belief, the contents of the foregoing Verified Complaint are true;

4.     The sources of my knowledge, information, and belief are my personal knowledge, documents, records, correspondence, and conversations relating to the subject-matter of the foregoing Verified Complaint.

Mackinac Island Ferry Capital LLC

By: Brent C. Rippe

Its: CEO

Notary Public,

Subscribed and sworn to before me, BRENT C. RIPPE
on this 7th day of August, 2014  Hamilton County, Ohio
Acting in Hamilton  County, Ohio

My Commission Expires 05-14-2016

THOMAS R. KNABB
Notary Public, State of Ohio
My Commission Expires 05-14-2016

Error! Unknown document property name.Error! Unknown document property name.